### THE MISSOURI PACIFIC RAILWAY COMPANY v. J. W. CHILDERS & Co.

#### No. 13.

**Damages in Shipment of Live Stock—Stipulation for Notice of Claim Reasonable, when.**—Plaintiffs shipped cattle over defendant's railway, under a written contract, stipulating that as a condition precedent to his right to any damages he would, within one day after delivery of the cattle at the delivering station, and before their removal therefrom, etc., give written notice of his claim for damages to the station agent of the company at such point of delivery, or to one of its general officers, etc. Being sued for damages occasioned in the shipment of the stock, the railway company pleaded such contract and stipulation, alleging that it had a station agent at the point of delivery, and that plaintiffs knew and saw such agent at the time of delivery, and yet failed to give the notice stipulated for. Plaintiffs' demurrer to this part of the answer, on the ground that such stipulation was unreasonable, contrary to public policy, and void, was sustained by the trial court. *Held*, the court erred in sustaining the demurrer. It should have been left to the jury to determine, under such pleadings and the evidence adduced, whether such stipulation as to notice was unreasonable or not. The validity of such stipulation depends on the circumstances of each particular case.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT.

*R. C. Foster* and *A. E. Wilkinson*, for appellant.—The court erred in sustaining plaintiffs' demurrer to the special answer of defendant, setting up a failure of plaintiffs to give notice of their claim for damages, as required in the contract for the shipment of said cattle set forth in said answer. Plaintiffs shipped their cattle to St. Louis under a written contract, by which, for a valuable consideration, they agreed that they would give notice of any claim for damages to their cattle to the station agent of defendant at St. Louis, or to some one of its general officers, in time to enable defendant to investigate the merits of their claim before the sale and slaughter of the cattle should render such investigation impossible. Hav-

ing failed to give such notice, they reply to defendant's plea that the contract is unreasonable and void, because it did not give the name of the station agent or general officer of defendant at St. Louis on whom they were to serve such notice.   The shipment was an interstate one, under which, as has been held, the contract was not one made invalid by our statute, but was to be determined as to its validity by the common law. Express Co. v. Darnell, 62 Texas, 639.   It was also a shipment entirely over defendant's road and ending at its terminus, where its general offices and officers were to be found, and where it had a station agent known to plaintiffs and seen by them at the time.   All this appears from the pleading; and yet under these facts it is held that a contract requiring notice to such agent or general officer is unreasonable and invalid because it fails to give the name of the person so to be notified.   This was error. Railway v. Cornwall, 70 Texas, 611; Railway v. Harris, 67 Texas, 166; Railway v. Underwood, 62 Texas, 21; Railway v. Trawick, 68 Texas, 319; Railway v. Moody, 35 Am. and Eng. Ry. Cases, 607; Railway v. Fagan, 72 Texas, 132; Express Co. v. Darnell, 62 Texas, 639.

*Mathis & Lewis*, for appellees.—The court correctly sustained the special exceptions to defendant's answer of contract to give notice of claim for damages.   The contract thus set up failed to show the names or place of residence of defendant's general officers or station agent at St. Louis, Missouri, if any it had; and such contract was illegal, unreasonable, against public policy, and void.   Railway v. Cornwall, 70 Texas, 611; Railway v. Harris, 67 Texas, 166.

HEAD, Associate Justice.—On August 31, 1888, appellees delivered to appellant at Gainesville, Texas, 349 head of beef steers, to be transported over its line of railway to St. Louis, Missouri, and thence to Chicago, Illinois, over connecting lines.   The cattle, however, were received by appellees, and disposed of in St. Louis without going to Chicago.   By reason of insufficient bedding in the cars, delays on the route, and bad facilities at stopping places for feeding and resting, the cattle were damaged $2.50 per head, four steers were killed and six crippled.   Appellees brought this suit for the damage so sustained, alleging the damage by reason of the four steers killed at $85.20, to the six steers crippled at $60.30, and a depreciation in value of 339 head at $2.50 per head, or $678; and also claimed $10 paid for extra bedding; and in their prayer ask judgment for the sum of $833.50.

Upon the trial the killing of the four and the crippling of the six steers was proven, but no evidence was offered as to their value or the damage thereby caused.   The depreciation in value of the 339 head was shown to have been as much as $2.50 per head, making $847.50.   It will be noticed that there was a mistake made by appellees in their calculation in

stating the damage to the 339 head at $678 instead of $847.50. A trial before a jury resulted in a verdict and judgment in favor of appellees for $872.50, from which this appeal is prosecuted.

The verdict, finding negligence on the part of appellant, and the damage to the 339 head to the extent above set forth, is supported by the evidence. There was evidence that appellees purchased some extra bedding, but it is not shown what this cost. Appellant pleaded a general denial, and specially, " that the cattle in question were shipped under a written contract executed by plaintiffs and defendant, whereby, for a valuable consideration, plaintiffs agreed with defendant that as a condition precedent to their right to recover any damages for any loss or injury to their said stock during the transportation thereof, or previous to unloading thereof for shipment, they would give notice in writing of their claim therefor to some agent or officer of defendant, or to its nearest station agent, or to the agent at the delivering station of the railroad which carries said stock to its destination, or to the nearest station agent or general officer of such delivering road, before said stock was removed from the point of delivery, or from the place of destination, and before said stock was mingled with other stock, within one day after the delivery of said stock at its point of destination, and before the same should have been removed, slaughtered, or mingled with other stock, to the end that such claim might be fully and fairly investigated; and that a failure to comply with the terms of said clause of their contract should be a complete bar to any recovery for any and all such claims. And defendant says that plaintiffs wholly failed to comply with their said contract or to give the notice therein provided for; and defendant says that it had a station agent at St. Louis, Missouri, which was the terminus of its line of road, and that its general offices and general officers were at St. Louis, Missouri, all of which was known to plaintiffs, who knew and saw said station agent at the time; and that the destination of said cattle by contract was Chicago, Illinois, to which place, if they were not delivered by defendant to plaintiffs at St. Louis by their consent, after leaving defendant's line of railway at St. Louis they were transported by and over the ——— railway, which railway had at Chicago, their point of destination, a station and station agent and general officers known to plaintiffs, and operated a line of railway into Chicago, which was the terminus of said delivering road."

The only question it is necessary for us to discuss in this case is the action of the court in sustaining the exception of appellees to the special answer of appellant, as set forth in the foregoing conclusions of fact. The exceptions so sustained by the court were:

1. Because the contract thus set up fails to show the name or place of residence of the general officer or station agent of defendant at St. Louis, Missouri, if any it had.

2. That said contract was illegal, unreasonable, against public policy, and voiu.

In the case of Railway v. Harris, 67 Texas, 172, it is said: "It may well be doubted if such a contract as is relied on in this case ought ever to be sustained. If the carrier seeks to make its liability to depend on notice to its officer or agent of the claim for damages, it would seem that the responsibility of determining who is an officer or agent of the carrier within the meaning of the contract should not be cast upon the shipper, but that the person and his locality to whom the notices must be given ought to be made certain by the contract itself, and especially so when the carrier is a corporation, and the property is to be delivered beyond the line of its road over another carrier."

In Railway v. Fagan, 72 Texas, 132, it is said: "If the shipper should make a contract to give such notice, it might be binding under our law if it was shown that there was such officer or agent at the point of destination, upon whom the notices could be conveniently served."

In Railway v. Adams, 78 Texas, 374, Associate Justice Henry, in delivering the opinion of the court, says: "The bill of lading contained a stipulation to the effect that claims for loss or damage must be presented to the delivering line within thirty-six hours after the arrival of the freight. The testimony showed that plaintiff's residence was within a few hundred yards of the depot at which the freight was received. That she received it on Saturday afternoon, and did not open the trunk or box in which the goods were packed until the following Monday morning, and that she was sick during the interval. The court, we think, fairly and correctly submitted to the jury the question whether the stipulation with regard to the time within which the claim was required to be made was a reasonable one. It was proper to submit that issue to the jury instead of its being decided as a question of law by the court, as appellant contends it should have been."

In Railway v. Greathouse, 82 Texas, 111, it is said: "Without determining whether this provision in a contract such as this can in any case be enforced, we do not think the appellant has brought itself within the rules laid down in those cases that permit such contracts to be enforced and that recognize their validity. When such provisions of a carrier's contract are enforced, it is upon the assumption that such agreement is a reasonable one, considered in the light of the subject matter of the contract and the circumstances and surroundings of the parties. To prove that such conditions in a contract are reasonable is a burden resting upon the carrier, who must show by proper pleadings and evidence the existence of facts that call for the enforcement of the conditions. There were no pleadings and proof whatever upon this question coming from the carrier."

We think it will be seen from the authorities above quoted, that in this State the validity of such a contract as the one pleaded by appellant depends upon the circumstances of each particular case, and that the circumstances to sustain such a contract must be set forth in the pleading and evidence of the carrier. Ordinarily we believe that a contract such as this, where the name and location of the agent to whom notice has to be given is not set forth in the contract, should be held unreasonable and invalid, but we are not prepared to say that this should be so in all cases. If the stock is to be delivered at a place where the carrier has a large number of agents and officers, we believe it would be unreasonable to require the shipper to take the responsibility of deciding which one of these is the authorized station agent, or which one of these is a general officer, within the meaning of a contract using these general terms. But if the delivery of the stock is to be made at a place where the carrier has only one agent, easily to be distinguished and easy of access, a contract which requires the notice in general terms to be given to the station agent at such place might not be unreasonable. We believe that the correct rule would be to hold that where the carrier pleads such a contract as this, in which the name of the agent or officer upon whom notice is to be served is not given, the pleading should be held bad, unless there be an additional allegation from which the jury might be authorized to find such contract to be reasonable as applied to the facts of that particular case; but when such allegations are made, it then becomes a question for the jury to decide as to whether or not the contract, under the evidence, is a reasonable one.

In this case appellant alleges that it had a station agent in St. Louis, Missouri, where the stock were delivered, and that appellees knew and saw said station agent at the time; and under this allegation we believe it became a question for the jury to decide under the evidence as to whether or not the contract was a reasonable one under the circumstances. If appellees knew and saw the station agent within the time called for in their contract, and were then aware of the damage they had sustained, we are not prepared to say that the jury would not be required to find that their failure to give notice as called for in their contract would preclude them from recovering.

It will not be necessary for us to consider the other assignments of error, as upon another trial appellees will doubtless by amendment make the corrections in the figures and prayer complained of therein.

In its second assignment of error appellant complains of the charge of the court, in that it makes it liable for the failure to transport the cattle in the usual time, irrespective of whether such failure or delay was negligent or not. We do not think the charge, when applied to the facts in evidence, is subject to the objection made to it.

For the error above indicated, let the judgment be reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 15, 1892.